Zayna M. SHELINE, Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY, Defendant.

No. 01–2223–DJW.

United States District Court,
D. Kansas.

Dec. 19, 2002.

Joan H. Deans, J. H. Deans Law Office, Raytown, MO, for Zayna M. Sheline, plaintiff.

Melanie D. Caro, Office of United States Attorney, Kansas City, KS, for Social Security Commissioner, defendant.

## MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

This is an action for judicial review of a final decision of Defendant Commissioner of Social Security denying Plaintiff's claim for a period of disability and for disability insurance benefits under Title II of the Social Security Act, as amended. Currently pending before the Court is Plaintiff's Motion for Judgment (doc. 7).

On February 9, 1998, Plaintiff protectively filed her application for disability benefits commencing June 1, 1987, as well as disability insurance benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. (Tr. 79–81). Plaintiff's applications were denied initially and upon reconsideration. (Tr. 58–61, 64–67). On May 24, 1999, an administrative hearing was held at Plaintiff's request before Administrative Law Judge Robert J. Curran (ALJ). The ALJ entered a partially favorable decision on October 27, 1999, finding that although Plaintiff was not entitled to a period of disability and disability insurance benefits prior to February 4, 1998, she was entitled to Supplemental Security Income as of February 4, 1998. (Tr. 11–25). On December 21, 1999, Plaintiff requested a review of that hearing decision. (Tr. 10). Additional evidence was received by the Appeals Council and made part of the record (Tr. 9). On March 9, 2001, the request for review was denied, thereby rendering the ALJ's decision the final decision of the Commissioner. (Tr. 7–8). On May 8, 2001, Plaintiff filed this suit pursuant to 42 U.S.C. § 405(g) seeking such judicial review.

## I. Facts

Plaintiff was born on May 15, 1951 and is a high school graduate. (Tr. 44). At the time of the hearing, Plaintiff lived in Kansas City, Missouri. (Tr. 35). Plaintiff alleges she became disabled, and thus entitled to disability benefits, on June 1, 1987. (Tr. 79).

There is medical evidence in the file to demonstrate that Plaintiff suffers from lupus with associated joint, shoulder, back and leg pain as well as cardiovascular conditions, which also are associated with the lupus. (Tr. 215–216, 325–329).

The medical records reflect Plaintiff met with a medical provider on the following occasions between June 1, 1987 (the date Plaintiff claims her disability began) and February 4, 1998 (the date the disability began according to the ALJ's findings):

| Date | Provider | Symptom/Complaint | Diagnosis | Tr. |
|---|---|---|---|---|
| 07/13/87 | Emergency Rm | Slip and fall | Spinal Contusion and Lumbosacral Sprain | 252 |
| 02/12/88 | Podlecki | Chest pain associated w/ viral respiratory infection after bout with intestinal flu | Post viral pleuritis; relatively symptom free since May 1987 | 190/193 |
| 02/29/88 | Podlecki | Headache | Tension headache (motrin) | 193/194 |
| 07/01/88 | Urgent Care | Assault—hand abrasion; shortness of breath due to trauma of assault | Contusion of the left hand with abrasions | 194/195 |
| 10/19/88 | Podlecki | Midcycle breakthrough bleeding; Pleuritic chest pain (not intense) | Pregnancy test | 195/197 |

| Date | Provider | Complaint | Diagnosis/Treatment | Pages |
|------|----------|-----------|---------------------|-------|
| 10/24/88 | VanHook | Pleuritic chest pain | Conduct pulmonary testing | 197/ 199/ 200 |
| 11/01/88 | Miller | Bloating and gastric pain after eating certain foods; nausea and reflux | Potential gall bladder disease or blind loop syndrome from intestinal bypass in 1970's | 200/ 209/ 208 |
| 11/28/88 | Podlecki | Chest Pain | Secondary to Pleurisy (prescribe prednisone) | 208/210 |
| 01/02/89 | Longmont | Upper respiratory infection | Upper respiratory infection | 219 |
| 10/31/89 | Podlecki | Annual Exam | Normal; asymptomatic | 221/211 |
| 02/02/90 | Emergency Rm | Sinus pain | Sinusitis | 279 |
| 03/30/90 | Podlecki | Headache | Possible sinusitis | 211/222 |
| 08/02/90 | Unknown | Work accident; injured right shoulder | Dislocated right shoulder | 285 |
| 09/07/90 | Emergency Rm | Right shoulder/arm pain | Suspected cervical disk injury (see 08/02/90 work accident) | 285 |
| 10/15/90 | Emergency Rm | Right shoulder pain | Minimal spondylosis; no disc herniation seen | 258 |
| 10/23/90 | Emergency Rm | Right shoulder pain | Tendonitis from 8/20 accident; no evidence of rotator cuff tear | 259/260 |
| 12/12/90 | Emergency Rm | Right shoulder pain | Normal x-ray | 262/263 |
| 01/28/91 | Surgery | Shoulder Arthroscopy | Tolerated procedure well | 330 |
| 02/01/91 | Emergency Rm | Chest Pain/Posterior back pain | Muscle spasm | 289 |
| 04/08/91 | Urgent Care (Guy) | Chest discomfort | Pericarditis; taper prednisone | 225/212 |
| 05/15/91 | Emergency Rm | Right shoulder pain | Normal | 263/264 |
| 05/22/91 to 05/28/91 | Hospital Stay | Right arm pain | Thrombosphlebitis; secondary to prior injury on 08/02/90 | 331 |
| 06/06/91 | Podlecki | Headaches/limited movement of neck | Thrombosphlebitis; secondary to prior injury on 08/02/90 | 212/226 |
| 09/16/91 | Emergency Rm | Neck pain | Cervical strain; possible cervical disk disease | 292 |
| 09/17/91 | Emergency Rm | Tylox ingestion | Tylox ingestion/arm & neck pain | 297/298 |
| 09/18/91 to 10/04/91 | Hospital Stay | Right arm pain | Post athroscopy/herniated cervical disk—secondary to prior injury on 08/02/90 | 356 |
| 11/20/91 | Emergency Rm | Shoulder pain | Normal | 264/265 |
| 04/24/92 | Urgent Care (Guy) | Chest Pain | Bronchitis w/Pleurisy | 245 |
| 10/21/92 | Emergency Rm | Assault—various injuries | Nasal contusion; neck strain; pelvis strain | 314/315 |
| 10/27/92 | Emergency Rm | Facial pain from 10/21 assault | Normal Healing | 318/319 |
| 01/13/93 | Podlecki | Chest discomfort/abdominal distress | Systemic lupus erythema/low grade gastritis | 229/245 |
| 02/08/93 | Podlecki | Cough/Sore throat | Bronchitis | 230 |

| 07/14/93 | Podlecki | Follow-up (cough & gastritis) | Nicoderm; Pregnisone; Proventil | 154 |
|---|---|---|---|---|
| 02/13/94 to 02/14/94 | Hospital Stay | Abdominal discomfort (admitted through emergency room) | Ureteral Lithiasis | 385 |
| 02/15/94 | Emergency Rm | Right Flank pain | Refused treatment | 270/271 |
| 06/14/94 | Emergency Rm | Burn on leg from motorcycle | Burn | 409 |
| 06/16/94 | Emergency Rm | Burn on leg from motorcycle | Burn | 401 |
| 11/07/94 | Emergency Rm | Assault—left leg pain | Use ice on leg | 418 |
| 06/13/96 to 06/14/96 | Hospital Stay | Difficulty breathing (admitted through emergency room) | Viral infection | 407/ 410– 417 |
| 08/04/96 | Emergency Rm | Dropped hammer on foot | Discharged | 433 |
| 09/14/96 | Emergency Rm | Insect bite | Discharged | 420 |
| 03/19/97 | Emergency Rm | Headache | Discharged | 428 |
| 12/15/97 | Emergency Rm | Joint Pain | Discharged (refill prednisone) | 436 |
| 01/11/98 | Emergency Rm | Sinus pain | Sinusitis | 438 |
| 01/12/98 | Emergency Rm | Tooth abscess | Discharged | 437 |

## II. ALJ Factual Findings

1. The claimant met the special earnings requirements of the Act on June 1, 1987, the date she stated she became unable to work, and continued to meet them through September 30, 1992, but not thereafter.

2. The claimant is presumed to have not engaged in substantial gainful activity since June 1, 1987.

3. The medical evidence establishes that the claimant has chronic musculoskeletal pain with diagnoses of Lupus or fibromyalgia or chronic pain syndrome as well as a history of right shoulder impingement and a recent onset of anxiety and depression, but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Part 404 of Regulation No. 4.

4. The claimant's allegations as to disabling symptoms were fully credible as of February 4, 1998, but not prior thereto, for the reasons previously set forth in the hearing decision.

5. At all times relevant herein, the claimant is unable to perform any of her past relevant work to include work as an entertainer and cashier and general laborer.

6. On or before the claimant's date last insured, September 30, 1992, the claimant retained a residual functional capacity for a wide range of light work activity with occasional lifting of up to twenty pounds and frequent carrying of up to ten pounds an sitting, standing and walking throughout a normal work day with no overhead activity with the right upper extremity.

7. At all relevant times, the claimant has been an individual of a younger age with a limited 12th grade education and no acquired or transferable work skills and no ability to perform past relevant work.

8. As of February 4, 1998, the claimant had an onset of mental symptoms further reducing her residual functional

capacity due to an inability to complete more than simple tasks or deal with work stress, also having limited ability to relate to others and inability to sustain a seated position throughout a normal work day due to increased physical pain and malaise related to her combined symptomology.

9. On or before her date last insured, September 30, 1992, the claimant was not disabled within the framework of Rule 202.20, Table 2, Appendix 2, Subpart P, Regulation No. 4 of 20 CFR. As of February 4, 1998, however, the claimant subsequently became disabled by operation of section 201.00(h) of Appendix 2, Subpart P, Regulation No. 4 of 20 CFR.

10. The claimant has been under a "disability" as defined in the Social Security Act, commencing February 4, 1998, but not prior thereto (20 CFR 404.1520(f) and 416.920(f)).

## III. Standard of Review

■■■ The ALJ's decision is binding on the court if supported by substantial evidence.[1] The court must determine whether the record contains substantial evidence to support the decision and whether the ALJ applied the proper legal standards.[2] While "more than a mere scintilla," substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] The court must scrutinize the record and take into account any evidence which fairly detracts from evidence that supports the Secretary's findings.[4] Evidence is not substantial "if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians) or if it really constitutes not evidence but mere conclusion."[5] A finding of no substantial evidence will be found "only where there is a conspicuous absence of credible choices or no contrary medical evidence."[6]

■■■ The court may neither reweigh the evidence nor substitute its discretion for that of the Commissioner.[7] At the same time, however, the findings of the Commissioner should not be mechanically accepted.[8] The court may not affirm the Commissioner's findings by isolating facts and labeling them substantial evidence, and the court must scrutinize the entire record to determine whether the Commissioner's conclusions are rational.[9] In applying these standards, "the court must keep in mind that the purpose of the Social Security Act is to ameliorate some of the rigors of life for those who are disabled or impoverished."[10]

1. 42 U.S.C. § 405(g); *Dixon v. Heckler*, 811 F.2d 506, 508 (10th Cir.1987).

2. *Castellano v. Sec'y of HHS*, 26 F.3d 1027, 1028 (10th Cir.1994).

3. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Miller v. Chater*, 99 F.3d 972, 975 (10th Cir.1996).

4. *Nieto v. Heckler*, 750 F.2d 59 (10th Cir. 1984).

5. *Knipe v. Heckler*, 755 F.2d 141, 145 (10th Cir.1985) (quotation omitted).

6. *Burkett v. Callahan*, 978 F.Supp. 1428, 1429 (D.Kan.1997) (quoting *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir.1992)).

7. *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir.2000) (citing *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir.1991)).

8. *Ortiz v. Apfel*, 39 F.Supp.2d 1275,. 1281 (D.Kan.1998).

9. *Id.*

10. *Owen v. Chater*, 913 F.Supp. 1413, 1418–19 (D.Kan.1995).

## IV. Analysis

The Social Security Administration defines "disability" as the inability to engage in substantial gainful activity for at least twelve months due to a medically determinable impairment.[11] A five-step sequential process is used in evaluating a claim of disability[12]:

> Step one is whether the claimant is currently engaged in substantial gainful activity. If claimant is not, the fact finder in step two decides whether the claimant has a medically severe impairment or combination of impairments. Step three entails looking at whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. If no equivalency, step four requires the claimant to show that because of the impairment he is unable to perform his past work. The final step is to determine whether the claimant has the residual functional capacity ("RFC") to perform other work available in the national economy, considering such additional factors as age, education, and past work experience.[13]

If the claimant fails at any of the steps in which he or she bears the burden of proof, consideration of any subsequent steps is rendered unnecessary.[14] The claimant bears the burden of proof at steps one through four, while the Commissioner bears the burden at step five.[15] If a claimant satisfies steps one, two and three, she is disabled; if a claimant satisfies steps one and two, but not three, then she must satisfy step four. If she satisfies step four, the burden shifts to the Commissioner to establish that the claimant is capable of performing work in the national economy.[16]

In this case, the ALJ denied benefits at step five for the time period from June 1, 1987 (the date Plaintiff alleges she became disabled) to September 30, 1992, the date she was last insured for disability insurance benefits. More specifically, the ALJ found that, on or before the claimant's date last insured, September 30, 1992, the claimant retained a residual functional capacity for a wide range of light work activity with occasional lifting of up to twenty pounds and frequent carrying of up to ten pounds and sitting, standing and walking throughout a normal work day with no overhead activity with the right upper extremity. In making this determination, the ALJ discounted Plaintiff's credibility with regard to her subjective complaints of disabling conditions during this time frame.

Plaintiff challenges the ALJ's determination that Plaintiff's testimony was not credible. Plaintiff also argues the ALJ erred in failing to consider medical evidence of Plaintiff's condition after the expiration of the claimant's insured status in determining the severity of the Plaintiff's condition before such expiration. Finally, Plaintiff argues the ALJ erred in failing to take into consideration the combined effect of all Plaintiff's conditions in finding she has the ability to work. The Court will

---

**11.** 42 U.S.C.A. § 423(d)(1)(A).

**12.** *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

**13.** *Anderson v. Apfel,* 100 F.Supp.2d 1278, 1281 (D.Kan.2000) (quotations and citations omitted); *see, also,* 20 C.F.R. §§ 404.1520, 416.920 (1996).

**14.** *Burnett v. Shalala,* 883 F.Supp. 565, 567 (D.Kan.1995).

**15.** *Id.*

**16.** *Williams v. Bowen,* 844 F.2d 748, 751 (10th Cir.1988).

address each of Plaintiff's allegations of error in turn.

## A. Credibility

 The Tenth Circuit has set forth the following factors for analyzing subjective complaints of disabling conditions: (1) whether claimant proves with objective medical evidence an impairment that causes the subjective condition; (2) whether a loose nexus exists between the impairment and the subjective condition; and (3) whether the subjective condition is disabling based on all objective and subjective evidence.[17] If Plaintiff satisfies the first two factors, the ALJ must consider Plaintiff's assertions regarding subjective conditions and decide whether he believes them.[18] In determining the credibility of Plaintiff's testimony, the ALJ should consider such factors as the levels of medication and their effectiveness, the extent to which Plaintiff attempts to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses and the consistency or compatibility of nonmedical testimony with objective medical evidence.[19]

In reviewing a credibility determination, the court should "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility."[20] Credibility is the province of the ALJ.[21] At the same time, the ALJ must explain why specific evidence relevant to each factor supports a conclusion that a claimant's subjective complaints are not credible.[22] Findings as to credibility should be closely linked to substantial evidence and not just a conclusion in the guise of findings.[23]

 In this case, the ALJ appropriately considered the factors set forth by the Tenth Circuit in determining the credibility of Plaintiff's testimony. More specifically, the ALJ discounted Plaintiff's credibility based on Plaintiff's poor work record prior to her alleged onset date of disability and her questionable work motivation. In addition, the ALJ noted that although Plaintiff has an extensive history of complaints of generalized musculoskeletal pain and arthralgia, the medical records did not support Plaintiff's claim that her impairments were disabling from June 1, 1987 to September 30, 1992.

The Court finds substantial evidence supports the ALJ's conclusion that Plaintiff has a poor work record. Notably, Plaintiff does not dispute this fact. The Court finds substantial evidence also supports the ALJ's conclusion that the medical records do not support Plaintiff's claim that her impairments were disabling from June 1, 1987 to September 30, 1992. More specifically, medical records submitted in this matter demonstrate that

---

**17.** *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir.1994); *Luna v. Bowen,* 834 F.2d 161, 163–64 (10th Cir.1987).

**18.** *See Luna,* 834 F.2d at 163.

**19.** *Huston v. Bowen,* 838 F.2d 1125, 1132 (10th Cir.1988).

**20.** *Casias v. Sec'y of HHS,* 933 F.2d 799, 801 (10th Cir.1991).

**21.** *Hamilton v. Sec'y of HHS,* 961 F.2d 1495, 1499 (10th Cir.1992)

**22.** *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir.1995); *but see Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir.2000) (*Kepler* does not require formalistic factor-by-factor recitation of evidence).

**23.** *Kepler,* 68 F.3d at 391 (quoting *Huston,* 838 F.2d at 1133) (footnote omitted).

- Notwithstanding a slip and fall with some sprain in July 1987, there was a gap in treatment from May 1987 to February 1988, despite allegations of an onset of disability in June 1987;

- After February 1988, Plaintiff was not seen again until July 1988, at which time her only complaint was a recent physical attack at work (x-rays were negative for any fractures). She was described during that visit as an unremarkable healthy woman but for some left hand contusions;

- Although Plaintiff had mild chest pain in October 1988, x-rays were negative overall and she was continued on a low dose of medication as prescribed in the past for possible symptoms related to lupus;

- Plaintiff was treated for chest pain again in December 1988, at which time her medication was adjusted. She also had constipation in November 1988, which did not persist;

- Plaintiff had an upper respiratory infection in January 1989 and then was not seen again until October 1989 with a normal examination (Plaintiff was cleared for a loan for ownership of a learning center);

- Although Plaintiff underwent an EKG in February 1990, it was negative and she was treated for nothing more than sinusitis in March 1990;

- Plaintiff sustained a shoulder injury in the Fall of 1990 and, after a course of studies, it was determined that Plaintiff had no significant disc pathology or rotator cuff tear. She did have an impingement which was repaired in January 1991 and completed a course of physical therapy in September 1991, at which time she was noted to have no more than cervical strain with only mild disc degeneration and residual strength of 4/5 in the upper extremities;

- Although there was a finding of some pericarditis in April 1991, it responded to medication and an echocardiogram came up negative;

- Plaintiff was not seen again until April 1992 when she had bronchitis;

- Plaintiff was treated with contusions in October 1992 after allegations of another attack with no evidence of any fractures;

- She was next seen in January 1993, after her date last insured, complaining of headaches with low grade gastritis noted and no progression of lupus; and

- Plaintiff continued to do fairly well after January 1993, but for occasional bronchitis and viral infections and occasional complaints of joint pain.

■ The Tenth Circuit has held that allegations of disabling pain may be discounted because of inconsistencies such as minimal medical treatment and the lack of significant pain medication.[24] Moreover, a medical condition that can reasonably be remedied with treatment or medication is not disabling.[25]

■ The ALJ's credibility findings must be affirmed if they are supported by substantial evidence in the record as a whole.[26] Because the ALJ articulated the inconsistencies upon which he relied in discrediting Plaintiff's subjective complaints, and because those inconsistencies are supported by the record, his credibility finding must be affirmed.

---

24. *Castellano v. Sec'y of Health & Human Services,* 26 F.3d 1027, 1029 (10th Cir.1994).

25. *Dawkins v. Bowen,* 848 F.2d 1211, 1213 (11th Cir.1988).

26. *Ellison v. Sullivan,* 929 F.2d 534, 537 (10th Cir.1990).

## B. Medical Evidence After Expiration of Claimant's Insured Status

In addition to challenging the ALJ's finding that Plaintiff's testimony regarding the severity of her impairments and/or symptoms were not credible for the time period from June 1, 1987 to September 30, 1992, Plaintiff also argues the ALJ erred in failing to consider medical evidence of Plaintiff's condition after the expiration of the claimant's insured status in determining the severity of the Plaintiff's condition before such expiration.

The ALJ found that on or before Plaintiff's date last insured, September 30, 1992, she retained the residual capacity to perform a wide range of light work activity with occasional lifting of up to twenty pounds and frequent carrying of up to ten pounds and sitting, standing and walking through a normal work day with no overhead activity with the right upper extremity. (Tr. 21). He also found that as of February 4, 1998, Plaintiff's mental symptomology further reduced her residual functional capacity and rendered her completely unable to work. (Tr. 21). The ALJ did not credit Plaintiff's mental impairment prior to September 30, 1992, due to a lack of objective evidence of any medically determinable mental impairment during that time period. (Tr. 19).

Significant in reviewing the ALJ's denial of Plaintiff's Title II claim is the expiration of Plaintiff's insured status on September 30, 1992. Insured status is a prerequisite for receiving disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 423(a)(c). Thus, Plaintiff must establish that she became disabled on or before September 30, 1992 in order to receive the benefits she is now seeking.[27]

In bearing her burden, Plaintiff argues that medical evidence of her condition after expiration of her insured status is relevant and that the ALJ should have considered the diagnosis of Plaintiff's depression in 1998 in making a decision regarding her disability status from 1987 to 1992 because such evidence "may bear upon the severity of the claimant's condition before the expiration of his or her insured status." In support of this argument, Plaintiff argues that she "could have presumably suffered depression as early as 1984, although untreated."

The Court is not persuaded by Plaintiff's argument. The Social Security Administration defines "disability" as the inability to engage in substantial gainful activity for at least twelve months due to a medically determinable impairment.[28] Plaintiff must establish that a medically determinable impairment rendering her unable to work existed prior to the expiration of her insured status. There simply is no evidence in the record—whether objective in the form of medical records or subjective in the form of testimony—to support a claim that Plaintiff suffered from depression during the time period from June 1, 1987 to September 30, 1992.

The cases cited by Plaintiff in her brief are unpersuasive. In *Basinger v. Heckler*,[29] there was a surplus of subjective evidence in the form of testimony from the Plaintiff and his family regarding Plaintiff's onset of disability and Plaintiff's inability to work due to such disability prior to expiration of benefits. The issue on appeal was that there were no medical records to support such testimony. In that context, the Eighth Circuit Court of Appeals held that mere lack of objective

---

27. *Markham v. Califano*, 601 F.2d 533, 535 (10th Cir.1979).

28. 42 U.S.C.A. § 423(d)(1)(A).

29. 725 F.2d 1166, 1169 (8th Cir.1984).

medical evidence to support subjective medical testimony regarding an impairment is insufficient for the ALJ to make a finding of no disability.

Here, there is no subjective or objective evidence in the record to support a claim that Plaintiff suffered from depression during the time period from June 1, 1987 to September 30, 1992. Plaintiff's argument—that she presumably could have suffered from depression prior to her diagnosis in 1998—fails to meet the requirement within the regulations that the impairment be medically determinable. It is the ALJ's responsibility to determine a claimant's residual functional capacity based only on the evidence before him or her in the record.[30]

### C. Combined Effect of Plaintiff's Impairments

Finally, Plaintiff argues the ALJ erred in failing to take into consideration the combined effects of all of Plaintiff's conditions in finding she had the ability to work from June 1, 1987 to September 30, 1992. It is true, the ALJ must consider the combined effects of impairments that may not be severe individually, but which in combination may constitute a severe medical disability.[31] Here, the ALJ's opinion reflects he satisfied the requirement and adequately considered the combined effects of Plaintiff's impairments. In separately discussing each alleged impairment and Plaintiff's subjective complaints of pain, the Court finds the ALJ sufficiently to have considered all of Plaintiff's impairments in combination with each other in determining that Plaintiff's impairments did not prevent her from light work from June 1, 1987 to September 30, 1992.

Accordingly, it is hereby ordered that Plaintiff's Motion for Reversal or Remand (doc. 7) is denied.

IT IS SO ORDERED.

---

**30.** 20 C.F.R. § 404.1545–46 and § 416.945–56 (2001).

**31.** *See Hargis v. Sullivan,* 945 F.2d 1482, 1491 (10th Cir.1991); 42 U.S.C. § 423(d)(2)(C).