Steven W. BURNETT, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health
and Human Services, Defendant.

Civ. A. No. 93–2551–GTV.

United States District Court,
D. Kansas.

April 5, 1995.

**566**

Joan H. Deans, J.H. Deans Law Office, Raytown, MO, for plaintiff Steven W. Burnett.

Robert A. Olsen, Office of U.S. Atty., Kansas City, KS, for defendant Secretary of Health and Human Services of U.S., Donna E. Shalala.

*MEMORANDUM AND ORDER*

VAN BEBBER, Chief Judge.

This is a review of an administrative proceeding pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq* and Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* Section 405(g) of the Act provides for judicial review of a final decision of the Secretary of Health and Human Services ("Secretary"). Section 1383(c)(3) of the Act provides for review of Title XVI claims. Plaintiff Steven Burnett has filed a motion for an order reversing the Secretary's decision (Doc. 12), and the Secretary, in response, has filed a motion for an order affirming the decision (Doc. 14). For the reasons set forth below, the decision of the Secretary is affirmed.

**I. Procedural Background**

On April 30, 1992, plaintiff filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.,* alleging a disability onset date of August 18, 1991. On May 6, 1992, he filed an application for supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* Both applications were denied initially and on reconsideration. On June 23, 1993, following a hearing in front of an administrative law judge (ALJ), the ALJ issued his opinion and concluded that the plaintiff was not entitled to benefits because he was not disabled. On October 28, 1993, the Appeals Council denied plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Secretary. Having fully exhausted his administrative remedies, plaintiff filed this action on December 29, 1993.

**II. Standard of Review**

The standard of review in this case is established by 42 U.S.C. 405(g), which provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." In reviewing findings and decisions of the Secretary, the court is limited to determining "whether there was substantial evidence in the record as a whole to support the findings." *Dixon v. Heckler,* 811 F.2d 506, 508 (10th Cir.1987). Substantial evidence is defined as more than a "mere scintilla," but less than a preponderance of the evidence, and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *see also Fowler v. Bowen,* 876 F.2d 1451, 1453 (10th Cir.1989). Although the ALJ is not an advocate for the claimant, it is the ALJ's duty to adequately develop the record such that the ALJ is informed about the facts relevant to the decision and learns the claimant's version of the facts. *Henrie v. United States Dep't of Health & Human Services,* 13 F.3d 359, 360–61 (10th Cir.1993). This duty exists even when the claimant is represented by counsel. *Id.*

It is the court's duty to scrutinize the entire record to determine whether the Secretary's conclusions are rational. *Holloway v. Heckler,* 607 F.Supp. 71, 72 (D.Kan.1985). The court does not fulfill its duty with mere mechanical acceptance of the Secretary's findings. *Martin v. Schweiker,* 562 F.Supp. 912, 917 (D.Kan.1982). In applying these standards, the court must keep in mind that the purpose of the Social Security Act is to ameliorate some of the rigors of the life for those who are disabled or impoverished.

*Dvorak v. Celebrezze*, 345 F.2d 894, 897 (10th Cir.1965).

■ In order to determine whether a Social Security claimant is disabled, the Secretary has developed a five-step sequential evaluation. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir.1988). If the claimant fails at any of the steps in which he or she bears the burden of proof, consideration of any subsequent steps is rendered unnecessary. The claimant bears the burden of proof at steps one through four.

■ The initial inquiry is whether the claimant is engaged in substantial gainful activity. If not, the second step requires the fact finder to determine whether the claimant has medically severe impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S.Ct. 2287, 2291–92, 96 L.Ed.2d 119 (1987). If the claimant does not have a listed impairment, step three entails determining "whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.* If there is no such equivalency, the claimant must show at step four that the "impairment prevents the claimant from performing work he has performed in the past." *Id.* At the fifth step, the fact finder must determine whether the claimant has the residual functional capacity "to perform other work in the national economy in view of his age, education, and work experience." *Id.* at 143, 107 S.Ct. at 2292. The Secretary bears the burden of proof at step five. *Id.* at 146, 107 S.Ct. at 2293–94.

## III. Relevant Facts

The relevant facts of this case, as derived from the record of the administrative hearing before the ALJ, are as follows:

Plaintiff Steven Burnett was born on January 23, 1962, and was 31 years old at the time of the hearing. Plaintiff is 6 feet 3 inches tall and weighs 210 pounds. Plaintiff has an eleventh grade education and is literate. He is married and has one minor child living at home in their apartment. Plaintiff does very little housework because of his pain. He has had no social activities since the alleged onset of his disability. He rarely visits friends, but they occasionally do come to visit him. Plaintiff is able to drive, although he does not currently possess a driver's license. Plaintiff testified that he sleeps about one half of the time and is unable to withstand physical exertion.

Plaintiff has past relevant work experience as a maintenance man, furniture mover, and tire changer. Plaintiff worked all of these jobs for numerous companies and for varying amounts of time, none for more than one consecutive year. Plaintiff has not engaged in substantial gainful employment since August 18, 1991, the date of the alleged onset of disability. On that date, plaintiff injured his back while he was working as a night grocery stocker. Plaintiff initially visited a chiropractor for his complaints. He then consulted Robert J. Takacs, M.D., on September 5, 1991, for complaints of low back pain caused by his work related injury. Plaintiff described his pain as an intermittent stiffness, sharp, stabbing, spasm, and burning. Dr. Takacs found that plaintiff favored his back, had normal heel to toe walking, straight leg raising caused back pain, but not leg pain. Plaintiff's deep tendon reflex, motor, and sensory examinations were within normal limits. The examination also revealed that plaintiff had lumbosacral tenderness with no sciatic tenderness. On September 18, 1991, Dr. Takacs noted that plaintiff had made progress in his therapy, but that he still had burning pain in his right low back. Dr. Takacs discontinued therapy, but recommended plaintiff continue an exercise program. Plaintiff was cleared to return to light duty work with a lifting restriction of no greater than 25 lbs.

On October 12, 1991, Gerald E. Staab, M.D., performed a CT scan which revealed abnormal findings at the L4/L5 level. Dr. Staab determined that the disc either herniated or there was significant asymmetric disc protrusion to the left of midline. Plaintiff returned to Dr. Takacs on October 30, 1991, continuing to complain of pain in his low back. Dr. Takacs noted that plaintiff's employer was not able to accommodate the light duty restriction, so plaintiff continued to remain off work. Dr. Takacs recommended

lumbar epidural steroids. Plaintiff remained medically cleared to perform light duty work.

On November 12, 1991, plaintiff received an epidural block, which appeared to significantly improve plaintiff's condition, although he continued to complain of low back pain. Plaintiff was attending physical therapy, demonstrated a good range of motion of his back, and was normal neurologically. Dr. Takacs advised plaintiff to attend a preconditioning program.

Plaintiff participated in the preconditioning program beginning in December 1991. He showed great signs of improvement during the few weeks that he attended. On December 27, 1991, plaintiff progressed to the work hardening program. Plaintiff's condition improved significantly. He was able to walk up to 7 miles outside, walk 20 minutes on a treadmill, ride 2.8 miles on a stationary bike, lift 90 to 95 pounds to his waist, and had improved flexibility. On January 10, 1992, plaintiff was discharged from the preconditioning program and was referred to physical therapy. On January 16, 1992, plaintiff was discharged from physical therapy, and he was released to return to work.

On January 22, 1992, Dr. Takacs recommended an additional epidural block and restricted plaintiff to light duty work with a lifting limit of 25 pounds. Dr. Takacs referred plaintiff to Melvin D. Karges, M.D. Plaintiff received his second epidural block on January 29, 1992. Following the epidural, Dr. Karges indicated that plaintiff had developed increased localized symptoms of back strain and sprain. He placed plaintiff on off duty status until an MRI could be performed.

On February 14, 1992, Dr. Staab performed an MRI on plaintiff's lumbar spine. Dr. Staab concluded from the results of the MRI that there was an asymmetric disc protrusion at the L4/L5 region. Plaintiff returned to Dr. Karges following the MRI with improved symptoms of pain. The examination revealed increased range of back motion. An electromyography (EMG) revealed normal results. Plaintiff was asked to undergo a behavioral pain management evaluation and was advised to repeat the preconditioning program with the goal of work hardening and return to work.

Plaintiff was evaluated by the Behavioral Pain Management Program on March 11, 1992. The findings revealed that plaintiff has significant psychological barriers to rehabilitation, the potential for antisocial behavior under stress, and lack of objective physical goals with the exception of normalizing lumbar paraspinous muscles. Objective examinations revealed that plaintiff's upper extremity flexibility was within normal limits and lower extremity flexibility was moderately limited. Plaintiff remained off medication. Plaintiff's Minnesota Multiphasic Personality Inventory (MMPI) profile may have been affected by his attempts to present an exaggerated version of his condition. Plaintiff was advised to continue with the preconditioning program. If plaintiff was unable to progress in the preconditioning program, then he was to enter into the behavioral pain management program.

On March 23, 1992, the physical therapist indicated that plaintiff met or exceeded the expected goals of the exercise program. Plaintiff's overall strength was well within the normal range. Plaintiff did, however, exhibit an "overall inconsistency" during the evaluation with an overreaction to the testing and inconsistency with change of position.

Dr. Karges examined plaintiff again on March 24, 1992, and recommended that he be released from care considering his current status and his reluctance to continue in the work hardening program. Dr. Karges noted that plaintiff had persistent musculoskeletal pain, asymmetric disc protrusion at L4/L5, no evidence of lumbosacral radiculopathy, and limited potential for improvement with the behavior pain management program.

On April 20, 1992, Nathan Shechter, M.D., an orthopedic specialist, examined plaintiff. Dr. Shechter observed that plaintiff had normal gait, walked without a limp, had no tenderness along the sciatic nerve of either leg, but did have tenderness in the lower lumbar region. Dr. Shechter concluded that plaintiff's functional disability was currently approximately 10 percent of the body as a whole permanent partial.

Plaintiff was treated at the Olathe Medical Center emergency room on December 29,

1992, for low back discomfort. Kevin Gould, M.D., observed that plaintiff had tenderness and some spasm in the right lower paravertebral muscles in the lower sacral region, and full active range of motion. Dr. Gould diagnosed plaintiff with acute severe low back pain.

At the administrative hearing, Jose Thomas–Richards, D.O., testified as a medical expert. Based on his review of the medical records, Dr. Thomas–Richards testified that there was no medical basis for the degree of pain plaintiff alleged. He testified that pain could originate from a soft tissue injury or muscle strain such as plaintiff experienced, but that he did not know of any case in which such injuries persisted in the severity and for the length of time that plaintiff claimed. Dr. Thomas–Richards believed plaintiff could sit or stand for 30–35 minutes at a time for four hours during an eight hour work day. Dr. Thomas–Richards also believed that plaintiff could walk two blocks and lift 15–20 pounds. Dr. Thomas–Richards' opinion regarding plaintiff's residual functional capacity did not change when he was asked to accept plaintiff's testimony as partially credible.

Lisa Beam, a vocational expert, testified that plaintiff's former jobs were unskilled and required heavy or medium exertion. The ALJ asked Beam to consider plaintiff's age, education, medical findings, and diagnosis in a hypothetical question. He also asked the expert to consider plaintiff experiencing constant pain exacerbated by activity but who could tolerate the pain as long as he maintained a certain residual function capacity. The expert determined that plaintiff would not be able to perform any of his past relevant jobs, but that there are a number of jobs in the national economy that such a person could perform including bench assembler, microfilm operator, optical goods assembler, and surveillance system monitor. Beam testified that if plaintiff had to lie down during the work day that there would be no jobs which he could perform.

Plaintiff requested at the conclusion of the hearing that further psychological evaluation be done at the government's expense. He claimed that he was financially unable to develop his psychological evaluation further.

It was agreed to develop the record regarding plaintiff's psychological situation.

On April 9, 1993, Edward Neufeld, Ph.D., conducted a psychological evaluation of plaintiff. The evaluation revealed that plaintiff has borderline intellectual functioning. Plaintiff exhibited serious limitations in ability to understand, remember, and carry out tasks. Dr. Neufeld noted that plaintiff performed well at memory tasks for a person of his intellectual abilities. Plaintiff is limited in his ability to work with stresses and interact with supervisors. The psychological evaluation revealed that plaintiff was preoccupied with the details of his physical symptoms which he recites as a "litany." Plaintiff was also diagnosed as "stressed out financially." Dr. Neufeld concluded that a component of plaintiff's injury was psychological and the mental status examination was not inconsistent with the conclusion.

## IV. Secretary's Decision

In his decision, the ALJ made the following findings:

1. Claimant met the special earnings requirement of the Act on August 18, 1991, the date claimant stated he became unable to work, and continues to meet them through the date of this decision.

2. Claimant has not engaged in substantial gainful activity at any time since August 18, 1991.

3. The medical evidence establishes that claimant has a low back disorder with complaints of low back pain; essential hypertension controlled by medications; and borderline intellectual functioning with a verbal IQ of 77, a performance IQ of 80 and a full scale IQ of 76 which has resulted in a slight restriction of activities of daily living, slight difficulties in maintaining social functioning, seldom has resulted in deficiencies of concentration, persistence or pace and has never resulted in any episodes of deterioration or decompensation in work or work-like settings. Claimant does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. Claimant's testimony as to the severity of his impairments and symptoms is found to be no more than partially credible inasmuch as such testimony is inconsistent with his work history, the reports and opinions of numerous treating and examining physicians who have consistently recommended exercise and rehabilitation, have never recommended any surgical procedure for a low back problem and who have not prescribed any significant long term prescription medications for pain. No treating or examining physician of record has ever recommended that claimant lie down for any impairment and a medical need to lie down is contraindicated by the medical regimen prescribed by numerous doctors. Claimant has not alleged nor does the evidence demonstrate any side effect of any medication since claimant is basically taking none. There is no evidence of any significant functional limitation which would prohibit work at a limited range of light exertion where claimant is allowed to sit and stand optionally throughout an 8 hour workday. Claimant does have some anger and frustration which were psychological factors affecting his physical condition but these factors are not disabling given the types of jobs available. There is no history, complaints or findings of any medical need to lie down or other types of fatigue or day after residual after effects in the outpatient treatment and other treatment records in this file.

5. Claimant has at all times retained the residual functional capacity for at least a limited range of light work and sedentary work where he is able to sit and stand optionally throughout an 8 hour workday, the parameters of which were more specifically set forth by the Administrative Law Judge at the time of the hearing.

6. Claimant is incapable of performing any of his past relevant work.

7. Claimant has ranged between 30 and 31 years of age which is defined as a "younger" individual.

8. Claimant has an eleventh grade, or "limited" education and is literate.

9. Based on an exertional capacity for a limited range of light work, and claimant's age, education and work experience, Section 404.1569 and the framework of Rules 202.17 and 201.24, Tables No. 1 and 2, Appendix 2, Subpart P, Regulations No. 4 indicate that a conclusion of "not disabled" is appropriate.

10. Although claimant has some nonexertional pain and some nonexertional mental deficits described in the Psychiatric Review Technique form attached hereto, using the above-cited rules as a framework for decision making, there are a significant number of jobs in the State of Kansas and in the national economy which claimant is capable of performing, the numbers and identities of which are specifically set forth in the Rationale section of this decision.

11. Claimant has not been under a "disability" as defined in the Social Security Act, as amended, at any time through the date of this decision.

The ALJ made his determination that plaintiff was not disabled at step five of the evaluation, where the Secretary bears the burden of proving that plaintiff has the residual functional capacity "to perform other work in the national economy in view of his age, education, and work experience." 20 C.F.R. § 416.920(f).

## V. Analysis

Plaintiff seeks a determination of disability based on pain caused by a low back injury incurred at work combined with psychological factors. In his motion for review of the Secretary's decision, plaintiff raises two main arguments. First, plaintiff argues that the ALJ erred in his evaluation of plaintiff's credibility regarding allegations of pain. Second, plaintiff asserts that the ALJ failed to properly evaluate plaintiff's psychological impairments in his determination that plaintiff was not disabled.

The ALJ determined that although plaintiff experienced some nonexertional pain, he retains the residual functional capacity to performing light exertional work. Plaintiff argues that the ALJ erred in finding the plaintiff's complaints of pain not credible. The Tenth Circuit has outlined the framework that is to be used in evaluating a disability claim based upon pain. *See Luna v.*

*Bowen,* 834 F.2d 161 (10th Cir.1987). In *Luna,* the court wrote:

> If a pain-producing impairment is demonstrated by objective medical evidence, the decision maker must consider the relationship between the impairment and the pain alleged. "[T]he impairment or abnormality must be one which 'could reasonably be expected to produce' the *alleged* pain." ... If an appropriate nexus does exist, the decision maker must then consider all the evidence presented to determine whether the plaintiff's pain is in fact disabling.

*Id.* at 163 (citation omitted).

■ In evaluating plaintiff's complaints of disabling back pain, the ALJ considered plaintiff's daily activities; the location, duration, frequency and intensity of pain alleged; the type, dosage, effectiveness, or side effects of medications; treatment other than medication; and measures taken to relieve symptoms. With these factors in mind, the ALJ concluded that plaintiff's complaints of overwhelming pain were not credible. An ALJ's credibility determination is entitled to great deference. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir.1988).

■ The ALJ's finding that plaintiff exaggerated the level of his pain is supported by medical evidence in the record including medical expert testimony at the hearing. No treating or examining physician has provided an opinion that plaintiff is disabled. Plaintiff does have a low back disorder and disc protrusion at the L4/L5 region, but EMG testing has been normal. Surgical relief is not indicated as necessary by the testing. None of plaintiff's physicians have instituted a treatment regimen that would substantiate plaintiff's allegation of overwhelming pain. Plaintiff has retained normal range of motion, normal strength, experiences no muscle spasm and no muscle atrophy.

■ Plaintiff's treating physician released him from care due to plaintiff's reluctance to continue physical therapy, which had been successful in the past. An orthopedic specialist concluded in April 1992 that plaintiff's functional disability was only approximately ten percent of the body as a whole. No medical evidence indicated that plaintiff should lie down during the day.

The court finds that the ALJ properly applied the *Luna* analysis in his evaluation of plaintiff's credibility. Implicit in the ALJ's findings is the conclusion that plaintiff established a nexus between the impairment and the pain. The ALJ concluded, however, that the evidence did not support plaintiff's claims of disabling pain. The court finds that the ALJ's determination that plaintiff was not disabled by pain is supported by substantial evidence in the record.

Plaintiff next alleges that the ALJ committed error in failing to properly consider the role plaintiff's mental condition plays in his disability. Following the administrative hearing, plaintiff underwent a psychological evaluation by Edward Neufeld, Ph.D. Dr. Neufeld performed a mental status examination and several psychological tests. Although he found plaintiff had borderline intellectual functioning, his orientation was intact and memory skills were within normal limits for a person of his intellectual abilities. Dr. Neufeld observed that plaintiff had some preoccupation with his physical symptoms and was marginally qualified for competitive employment. The final diagnosis was psychological factors affecting physical condition.

The ALJ considered the psychological evaluation and concluded that there was no evidence that the psychological problems would last for more than twelve months. Additionally, the ALJ made the following findings in accordance with 20 C.F.R. § 404.1520a(b): (1) plaintiff's borderline intellectual functioning was no more than a slight restriction of activities of daily living; (2) plaintiff experienced slight difficulties in maintaining social functioning; (3) plaintiff seldom would be expected to experience deficiencies of concentration, persistence or pace; and (4) there were no episodes of deterioration or decompensation in work settings. The findings in these four areas indicate that plaintiff's mental impairment is not severe. 20 C.F.R. § 404.1520a(c)(1).

■ Plaintiff argues that Dr. Neufeld's opinion that plaintiff was no more than "marginally qualified for competitive employment" supports his claim of disability. The court

notes that Dr. Neufeld did not state that plaintiff would be unable to work. It is also apparent from the record that Dr. Neufeld's opinion that plaintiff was "marginally qualified" is based primarily on plaintiff's borderline intellectual functioning, not on the psychological component of plaintiff's complaints of pain. The court concludes that the ALJ's findings are supported by substantial evidence. The ALJ appropriately considered the psychological component of plaintiff's complaints of pain and plaintiff's limited intellectual abilities in light of Dr. Neufeld's evaluation.

Based on its review of the record, the court finds that the ALJ's decision is supported by substantial evidence and should not be reversed or remanded. The record supports the ALJ's finding that plaintiff's complaints of overwhelming pain were not credible. Additionally, the ALJ appropriately evaluated plaintiff's psychological impairments in reaching his decision that plaintiff is not disabled.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff's motion to reverse the Secretary's decision (Doc. 12) is denied. Defendant's motion for an order affirming the decision (Doc. 14) is granted.

**IT IS SO ORDERED.**