Anita M. FIATTE, Plaintiff,

v.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,
Defendant.

No. CIV.A. 01–2502–DJW.

United States District Court,
D. Kansas.

March 17, 2003.

Joan H. Deans, J.H. Deans Law Office, Raytown, MO, for Plaintiff.

Christopher Allman, Christina L. Medeiros, David D Zimmerman, Office of United States Attorney, Kansas City, KS, for Defendant.

### MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

Plaintiff seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), of the final decision of Defendant Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act, as amended. Currently pending before the Court is Plaintiff's Motion for Judgment (doc. 11).

### I. Standard of Review

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), a court may render "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner

of Social Security, with or without remanding the cause for a rehearing." The court reviews the decision of the Commissioner to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision.[1] The Supreme Court has held that "substantial evidence" is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." [2] In reviewing the record to determine whether substantial evidence supports the Commissioner's decision, the court may neither reweigh the evidence nor substitute its discretion for that of the Commissioner.[3] Evidence is not considered substantial "if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." [4]

█ The court also reviews the decision of the Commissioner to determine whether the Commissioner applied the correct legal standards.[5] The Commissioner's failure to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis.[6]

Accordingly, the court reviews the decision of the Commissioner to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision and to determine whether the correct legal standards were applied.[7]

## II. Procedural History

Plaintiff filed her applications for disability insurance benefits and supplemental security income benefits on May 24, 1999. (*See* Certified Transcript of the Record ("Tr.") at 96–99, 231–241). The Commissioner denied the claims initially and upon reconsideration. (Tr. 72–77, 81–85). On February 24, 2000, the Administrative Law Judge ("ALJ") conducted a hearing on Plaintiff's claim. (Tr. 90–91).

On March 9, 2000, the ALJ issued his decision, in which he concluded Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to receive disability insurance and supplemental security income benefits. (Tr. 12–21). In reaching this conclusion, the ALJ determined Plaintiff's impairments did not prevent her from performing a range of sedentary unskilled work and that there are a significant number of jobs in the local and national economies she could perform, such as cashier, surveillance monitor, telephone solicitor and information clerk. (Tr. 19–20).

On May 8, 2000, Plaintiff requested a review of the hearing decision by the Appeals Council (Tr. 10, 244–45), which was denied by the Appeals Council on August 17, 2001 (Tr. 7–8). The findings of the

1. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir.1994).

2. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

3. *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir.2000) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

4. *Knipe v. Heckler*, 755 F.2d 141, 145 (10th Cir.1985) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983)).

5. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.1994); *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.1994).

6. *Glass*, 43 F.3d at 1395 (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993)).

7. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497 (10th Cir.1992).

ALJ therefore stand as the final decision of the Commissioner in this case.

### III. General Background

Plaintiff alleges that she became disabled and eligible to receive disability insurance and supplemental security income benefits on April 26, 1998, due to a back injury and a history of asthma and bronchitis. (Tr. 268–269, 284). At the time of the hearing before the ALJ, Plaintiff was 40 years of age. (Tr. 265). Under the Social Security regulations, she is classified as a "younger" individual.[8] Plaintiff completed the eleventh grade and, at the time of the hearing, she was working on obtaining her GED. (Tr. 266). Plaintiff's past relevant work consists solely of working as a nurse's assistant. (Tr. 267). In 1984, Plaintiff became certified as a nurse's assistant (CNA). (Tr. 267). Her duties as a CNA included dressing, feeding and transferring patients, as well as engaging in activities with them. (Tr. 267). She lifted patients weighing up to 175 pounds. (Tr. 268). Plaintiff performed lighter duties as well, including passing ice water, feeding patients and making beds on a part-time basis following the on-the-job injury to her back. (Tr. 269). She ultimately was removed from light duty because of her inability to bend and make beds. (Tr. 270). Plaintiff ceased all work activity on April 26, 1998, the alleged onset date of her disability. (Tr. 20, 271).

### IV. The ALJ's Findings

In his decision of March 9, 2000, the ALJ made the following findings (Tr. 21):

1. The claimant met the earnings requirements of the Act on April 26, 1998, the alleged onset date, and continued to meet them through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since April 26, 1998.

3. The medical evidence establishes the claimant has the following severe impairments: a small herniation of the L5–S1 disc, history of asthma and bronchitis. Nevertheless, she does not have an impairment or combination of impairments listed in, or medically equal to one listed in, 20 C.F.R. Part 404, Appendix 1, Subpart P.

4. The claimant's testimony is not found credible when considered in light of the medical signs and findings, history of medical treatment, reports of treating and examining physicians and the inconsistencies in the claimant's testimony.

5. The claimant has the residual functional capacity to perform work-related activities except for lifting more than 10 pounds maximum occasionally and 2 to 3 pounds frequently, a sit/stand option and an air conditioned/climate controlled environment that is free of dust.

6. The claimant is unable to perform past relevant work.

7. The claimant is a younger individual and has a limited education.

8. The claimant has no acquired work skills that are transferable to semi-skilled or skilled work functions of other work within her residual functional capacity.

9. After considering the claimant's above described residual functional capacity for a range of work and age, education and past relevant work, the ALJ is persuaded that the claimant would be able to make a vocational adjustment to work which

---

8. *See* 20 C.F.R. §§ 404.1527, 416.927.

exists in significant numbers in the local and national economies.

10. The claimant has not been under a "disability" as defined by the Social Security Act, as amended, since April 26, 1998.

## V. Analysis and Discussion

The Social Security Administration defines "disability" as the inability to engage in substantial gainful activity for at least twelve months due to a medically determinable impairment.[9] A five-step sequential process is used in evaluating a claim of disability:[10]

Step one is whether the claimant is currently engaged in substantial gainful activity. If claimant is not, the fact finder in step two decides whether the claimant has a medically severe impairment or combination of impairments. Step three entails looking at whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. If no equivalency, step four requires the claimant to show that because of the impairment he is unable to perform his past work. The final step is to determine whether the claimant has the residual functional capacity ("RFC") to perform other work available in the national economy, considering such additional factors as age, education, and past work experience.[11]

If the claimant fails at any of the steps in which he bears the burden of proof, consideration of any subsequent steps is rendered unnecessary.[12] The claimant bears the burden of proof at steps one through four, while the Commissioner bears the burden at step five.[13] If a claimant satisfies steps one, two and three, he is disabled; if a claimant satisfies steps one and two, but not three, then he must satisfy step four. If he satisfies step four, the burden shifts to the Commissioner to establish that the claimant is capable of performing work in the national economy.[14]

In this case, the ALJ denied benefits at step five, finding Plaintiff has the residual functional capacity to perform other work available in the local and national economies with the following restrictions: she cannot lift more than 10 pounds occasionally and 2 to 3 pounds frequently, she must have a sit/stand option and she must work in an air conditioned/climate controlled environment that is free of dust. In making this determination, the ALJ discounted Plaintiff's credibility with regard to her subjective complaints of disabling conditions.

Plaintiff challenges the ALJ's determination on three grounds. First, Plaintiff argues the ALJ improperly determined Plaintiff's impairment did not meet or equal the 1.05(C) Listing (Disorders of the Spine). Second, Plaintiff argues the ALJ failed to make proper credibility findings with respect to Plaintiff's subjective complaints. Finally, Plaintiff argues the ALJ erred in finding Plaintiff has the ability to perform other work in the local and national economies. The Court will address

9. 42 U.S.C.A. § 423(d)(1)(A).

10. *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

11. *Anderson v. Apfel,* 100 F.Supp.2d 1278, 1281 (D.Kan.2000) (quotations and citations omitted); *see also,* 20 C.F.R. §§ 404.1520, 416.920 (1996).

12. *Burnett v. Shalala,* 883 F.Supp. 565, 567 (D.Kan.1995).

13. *Id.*

14. *Williams v. Bowen,* 844 F.2d 748, 751 (10th Cir.1988).

each of Plaintiff's allegations of error in turn.

## A. Listing 1.05(C)

Step three of the five-step disability evaluation process provides that if the claimant is not currently engaged in substantial gainful activity and has a medically severe impairment, the fact finder must determine whether the impairment meets or is equivalent to one of a number of impairments listed in the regulations published by the Social Security Administration.[15] If the impairment meets or is equivalent to one of the "listed" impairments, then the fact finder—without considering the claimant's age, education or past work experience—automatically must make a finding that the claimant lacks the residual functional capacity to work.

Part 404, Subpart P, Appendix One of Title 20 of the Code of Federal Regulations sets forth the Listing of Impairments. Section 1.05(C) within the Listing of Impairments addresses the specific impairment of Disorders of the Spine claimed by Plaintiff:

C. Other vertebrogenic disorders (e.g. herniated nucleus pupolsus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:

  1. Pain, muscle spasm, and significant limitation of motion in the spine; and

  2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.[16]

The ALJ concluded Plaintiff's condition failed to meet the criteria listed based on his finding that, although claimant does have a right side L5–S1 disc herniation, she does not have pain, muscle spasm or significant limitation of motion in the spine and she does not have significant motor loss with muscle weakness and sensory/reflex loss—all required in the listing. The ALJ further found that Plaintiff's impairments are not of at least equal medical significance to those that are contained in the listed impairment nor are the functional limitations resulting from her impairment the same as the disabling functional consequences of a listed impairment. (Tr. 17).

Citing to the case of *Clifton v. Chater*,[17] Plaintiff asserts the ALJ failed to provide specific support for his conclusion that Plaintiff's impairment did not meet or equal Listing 1.05(C). In *Clifton*, the Tenth Circuit reversed the district court and remanded the case for additional proceedings when the ALJ made such a bare conclusion that it was effectively beyond meaningful judicial review.[18] As the court specifically explained, however, its decision was based on the fact that "the ALJ did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing or Listings; he merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment."[19]

In the case before the Court, the ALJ identified the relevant listings and linked his evaluation of the severity of Plaintiff's functional limitations with evidence in the record. These findings are far from the

---

**15.** *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

**16.** 20 C.F.R. Part 404, Subpart P, Appendix One, Section 1.05(C).

**17.** 79 F.3d 1007 (10th Cir.1996).

**18.** *Clifton*, 79 F.3d at 1009.

**19.** *Id.*

type of summary conclusion rejected in *Clifton* and, therefore, are not beyond any meaningful judicial review. In his decision, the ALJ found that Plaintiff's daily activities—such as sitting down to fold clothes, standing up and doing dishes for 20 minutes, sitting down and working on crafts for a couple of hours, doing crossword puzzles for an hour and attending general education classes for two hours, one night a week—undermine her reported functional limitations.

Plaintiff's reported activities of daily living—filled out by Plaintiff in October 1999 (four months before the hearing), support the ALJ's finding in this regard. Plaintiff states she bathes, washes her hair and changes her clothing daily. (Tr. 144–150). Plaintiff further states she prepares full meals for herself everyday, which takes 30 to 45 minutes per meal. (Tr. 144–150). Plaintiff does three to four loads of laundry weekly with limited help, which takes approximately two hours, and, except for moving furniture, performs all of her own housecleaning chores, including sweeping, vacuuming, mopping, dusting, washing dishes and washing/cleaning her van. (Tr. 144–150 and 198). Plaintiff drives and grocery shops for herself on a weekly basis, needing assistance only with carrying the heavy items and grocery bags. (Tr. 144–150). Plaintiff is able to leave home without assistance and spends approximately 2 hours per day away from home visiting. (Tr. 144–150).

The medical records also support the ALJ's findings as to Plaintiff's impairments and the relevant listing. A June 19, 1998 examination by Dr. Glaser revealed no muscle spasms, motor weakness or reflex loss. (Tr. 211). Although Plaintiff was diagnosed with a mild focal disc herniation on June 29, 1998 (Tr. 230), when she was examined by Dr. Aks on July 14, 1998, her motor strength was "good," and there were no muscle spasms or significant limitations in motion noted. (Tr. 228).

While Plaintiff cites Dr. Glaser's July 31, 1998 visit as support for her contention that she met the listing, examination on that day showed negative straight leg raising for back pain and Plaintiff's reflexes were brisk and symmetric. (Tr. 209). With respect to working, Plaintiff was restricted by Dr. Glaser only from lifting patients and making beds. (Tr. 209). On September 2, 1998, examination demonstrated normal reflexes, good strength and negative straight leg raising. (Tr. 208). Moreover, Dr. Glaser noted on October 1, 1998 that Plaintiff had "absolutely normal deep tendon reflexes" and that straight leg raising was negative for back pain. (Tr. 207).

An October 16, 1998 evaluation revealed Plaintiff demonstrated a tolerance for returning to work with modified duty of lifting 30 pounds up to bench height, 20 pounds to upper shelf height and carrying 25 pounds occasionally. (Tr. 174–176). Notably, these lifting and carrying activities were limits Plaintiff placed on herself. (Tr. 174–176). A November 19, 1998 worker's compensation exam by Brent Koprivica, M.D. reflects a medical opinion that Plaintiff could return to work and was limited only to a light to medium level of physical demand. (Tr. 185). In the examination, Dr. Koprivica noted Plaintiff's strength was normal, she had no sensory losses and she had appropriate functional motion of the spine. (Tr. 183–184).

A July 24, 1999 physical examination conducted by Dr. Kamran Riaz reflects a fairly preserved range of motion in the spine, no paraspinous muscle spasms, and motor and sensory functions completely intact. (Tr. 191–192).

It is the claimant who has the burden of proving that her impairment or combination of impairments meets or equals the

Listings.[20] To *meet* a listed impairment, the claimant's medical findings (i.e., symptoms, signs and laboratory findings) must match those described in the listing for that impairment.[21] To *equal* a listing, the claimant's medical finding must be "at least equal in severity and duration to the listed findings."[22] Determinations of equivalence must be based on medical evidence only and must be supported by medically acceptable clinical and laboratory diagnostic techniques.[23]

■ Although Plaintiff was diagnosed with a "mild" herniation, examination repeatedly has shown no muscle spasms, only minor limitation of motion of the spine, no motor loss or weakness, no sensory loss and no reflex loss. (Tr. 184, 192, 208, 211, 228, 207–209, 211). Consequently, the Court finds the record as a whole contains substantial evidence to support the Commissioner's decision that Plaintiff's impairment did not meet or equal the 1.05(C) Listing (Disorders of the Spine).

**B. The ALJ's Credibility Determination**

■ The Tenth Circuit has set forth the following factors for analyzing subjective complaints of disabling conditions: (1) whether claimant proves with objective medical evidence an impairment that causes the subjective condition; (2) whether a loose nexus exists between the impairment and the subjective condition; and (3) whether the subjective condition is disabling based on all objective and subjective evidence.[24] If Plaintiff satisfies the first two factors, the ALJ must consider Plaintiff's assertions regarding subjective conditions and decide whether he believes them.[25] In determining the credibility of Plaintiff's testimony, the ALJ should consider such factors as the levels of medication and their effectiveness, the extent to which Plaintiff attempts to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses and the consistency or compatibility of nonmedical testimony with objective medical evidence.[26]

■■ In reviewing a credibility determination, the court should "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility."[27] Credibility is the province of the ALJ.[28] At the same time, the ALJ must explain why specific evidence relevant to each factor supports a conclusion that a claimant's subjective complaints are not credible.[29] Credibility findings should be closely linked to substantial evidence and not just a conclusion in the guise of findings.[30]

20. 20 C.F.R. § 404.1520(d).

21. 20 C.F.R. §§ 404.1525(d), 404.1528.

22. 20 C.F.R. § 404.1526(a).

23. 20 C.F.R. § 404.1526(b).

24. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.1994); *Luna v. Bowen*, 834 F.2d 161, 163–64 (10th Cir.1987).

25. *Luna*, 834 F.2d at 163.

26. *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir.1988).

27. *Casias v. Sec'y of HHS*, 933 F.2d 799, 801 (10th Cir.1991).

28. *Hamilton v. Sec'y of HHS*, 961 F.2d 1495, 1499 (10th Cir.1992).

29. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995); *but see, Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir.2000) (*Kepler* does not require formalistic factor-by-factor recitation of evidence).

30. *Kepler*, 68 F.3d at 391 (quoting *Huston*, 838 F.2d at 1133) (footnote omitted).

■ Utilizing the *Luna* factors, the ALJ found objective medical evidence to demonstrate that Plaintiff has an impairment and that a loose nexus exists between her impairment and the subjective condition of which she complains. Because Plaintiff satisfied the first two factors, the ALJ then went on to consider Plaintiff's assertions regarding her subjective condition to determine if they were credible. Upon such consideration, the ALJ determined Plaintiff's testimony was not credible when considered in light of the medical signs and findings, history of medical treatment, reports of treating and examining physicians and the inconsistencies in Plaintiff's testimony. For the reasons set forth below, the Court finds substantial evidence supports the ALJ's conclusion.

### Levels of Medication and Their Effectiveness

Plaintiff testified that, except at night, over-the-counter medications like Tylenol or Ibuprofen reduce her pain rating from 7 to 3 on a scale of 1 to 10. (Tr. 277). At night, Plaintiff finds relief from a prescribed drug called Hydroco, which allows her to sleep with no problem. (Tr. 278). There is no indication in the record that Plaintiff's medications were not efficacious when taken. The fact that Plaintiff's medication provides relief is inconsistent with a disabling impairment.[31] And, there has been no observation or notation by any treating or examining medical professional of record that the Plaintiff experienced any adverse side effects to medication.

### Work History

The ALJ accurately found Plaintiff's work history to be sporadic with below average earnings. (Tr. 18, 106). The consistency of a claimant's work history is probative of credibility because it is a measure of the claimant's willingness and motivation to work.[32] A prior work history characterized by fairly low earnings and significant breaks in employment casts doubt on a claimant's credibility.[33]

### Activities

The Court agrees with the ALJ's conclusion that Plaintiff's allegation of disability is inconsistent with her activities of daily living such as cooking daily, In his decision, the ALJ found that Plaintiff's daily activities—such as bathing, washing hair, changing clothes, preparing full meals, doing laundry, sweeping, vacuuming, mopping, dusting, washing dishes, washing her van, grocery shopping, working on crafts, doing crossword puzzles, driving to friends and relatives houses to visit and attending general education classes for two hours, one night a week—undermine her reported functional limitations. Plaintiff's lifestyle, although restricted, is not consistent with total disability.[34]

Moreover, no doctor ever restricted Plaintiff from all work. The lack of significant restrictions imposed by a treating physician supports the ALJ's finding of no disability.[35]

---

**31.** *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir.1994); *Clark v. Chater*, 75 F.3d 414, 417 (8th Cir. 1996); *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir.1988).

**32.** *Ellison v. Sullivan*, 929 F.2d 534, 537 (10th Cir.1990); *Frey v. Bowen*, 816 F.2d 508, 516 (10th Cir.1987).

**33.** *Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir.1995).

**34.** *See Bean v. Chater*, 77 F.3d at 1213 (activities of cooking, dusting, doing laundry, grocery shopping, driving and watching television found inconsistent with a claim of disability); *Castellano*, 26 F.3d at 1029 (activities such as fixing breakfast for himself and his son and doing housework); *Potter v. Secretary of HHS*, 905 F.2d 1346, 1349 (10th Cir.1990) (activities such as knitting, light cleaning, grocery shopping, family laundry, full-time household and parenting).

**35.** *Brown v. Chater*, 87 F.3d 963, 965 (8th Cir.1996).

Although Plaintiff claims the need to nap twice daily, she has never informed her physicians of this alleged need.[36] On July 31, 1998, Dr. Glaser recommended physical therapy, noting that Plaintiff's alleged impairment was "definitely not a surgical problem." (Tr. 209). Dr. Glaser noted on September 2, 1998, that while Plaintiff did have a disc abnormality, he believed she was "tending to stretch this out." (Tr. 208). Allegations of disabling pain may be discounted because of inconsistencies, such as minimal medical treatment and the lack of significant pain medication.[37] (Tr. 207).

The ALJ's credibility findings must be affirmed if they are supported by substantial evidence in the record as a whole.[38] Because the ALJ articulated the inconsistencies upon which he relied in discrediting Plaintiff's subjective complaints, and because those inconsistencies are supported by the record, his credibility finding must be affirmed.

## C. Ability to Perform Other Work in the National Economy

In addition to challenging the ALJ's finding that Plaintiff's testimony regarding the severity of her impairments and/or symptoms were not credible, Plaintiff also asserts the ALJ erred in finding that she has the ability to perform some work in the national economy other than her past work. More specifically, Plaintiff argues the ALJ improperly relied upon the responses of the vocational expert to a hypothetical question that did not include

- Plaintiff's alleged need to lie down twice a day for approximately an hour each time to alleviate pain; and
- Plaintiff's inability to concentrate and focus due to pain.

Plaintiff goes on to argue that, when the ALJ included these limitations in the hypothetical to the vocational expert, the expert testified that all work would be precluded or significantly compromised.

■ The ALJ's hypothetical question to the vocational expert must reflect with precision all of Plaintiff's impairments that are substantially supported by the record.[39] The ALJ need not, however, include every limitation claimed by Plaintiff, but only those limitations that he/she finds exist based upon substantial evidence in the record.[40] The ALJ determined Plaintiff's claims of disabling limitations in the context of two naps per day, as well as her inability to concentrate or focus due to pain, were not credible. The Court has affirmed those credibility findings.

The ALJ's hypothetical question to the vocational expert accurately reflected the ALJ's assessment of claimant's impairments and limitations. The hypothetical described a 40 year old person with an eleventh grade education who has impairments to include a small disc herniation at the L5–S1 level, with a history of two epidural blocks and no other back surgery, a history of complaint of the right upper extremity and a history of asthma and respiratory problems including treatments

---

**36.** *See Brunston v. Shalala,* 945 F.Supp. 198, 202 (W.D.Mo.1996) (the fact that no physician stated plaintiff needed to lie down during day indicated plaintiff was lying down by choice rather than medical necessity); *Schroder v. Sullivan,* 796 F.Supp. 1265, 1270 (W.D.Mo. 1992) (lack of documentation regarding plaintiff's need to nap led court to find plaintiff chose to nap when he could remain awake).

**37.** *Castellano v. Sec'y of Health & Human Servs.,* 26 F.3d 1027, 1029 (10th Cir.1994).

**38.** *Ellison v. Sullivan,* 929 F.2d 534, 537 (10th Cir.1990).

**39.** *Decker v. Chater,* 86 F.3d 953, 955 (10th Cir.1996).

**40.** *Decker,* 86 F.3d at 955; *Hintz v. Chater,* 913 F.Supp. 1486, 1495 (D.Kan.1996).

for bronchitis rather recently. The limitations set forth by the ALJ included a requirement that Plaintiff not lift more than 10 pounds occasionally and 2 to 3 pounds frequently, she must have a sit/stand option and she must work in an air conditioned/climate controlled environment that is free of dust. The ALJ's assessment is supported by substantial evidence in the record. Under these circumstances, the ALJ was under no obligation to describe the additional limitations urged by claimant.[41]

■ Based upon these impairments and resulting limitations given to the vocational expert, the expert testified that, although the claimant could not perform her past relevant work, Plaintiff could perform occupations requiring only sedentary unskilled work with a sit/stand option. The vocational expert gave a representative sample of such occupations that included a cashier, a surveillance system monitor, a telephone solicitor and an information clerk. The ALJ then noted the numbers of jobs cited by the vocational expert for the representative sample, in both the local and national economies, and found them to be significant. The Court finds the ALJ did not err in finding Plaintiff has the ability to perform some other work in the local and national economy.

It is hereby ordered that Plaintiff's Motion for Judgment in her favor is (doc. 11) is denied.

---

**41.** *Decker v. Chater,* 86 F.3d 953, 955 (10th Cir.1996) (stating that, while hypotheticals to the vocational expert must precisely reflect impairments, "they need only reflect impairments and limitations that are borne out by the evidentiary record").